# In the United States Court of Federal Claims

No. 09-399 C
(Filed October 6, 2011)

P&K CONTRACTING, INC.,          )
                        Plaintiff,   )
           v.                        )
                                    )
THE UNITED STATES,         )
                       Defendant.  )

---

## ORDER

This litigation involves a claim for $245,525.00 stemming from a contract awarded by the Department of the Army for the renovation of the Indoor Marksmanship Center ("IMC") at the United States Military Academy at West Point ("West Point"). Following discovery activity by the parties, defendant has moved for summary judgment. Plaintiff opposes defendant's motion.

---

## FACTS

In 1996, a fire gutted the pistol range in the IMC at West Point and the rifle range suffered smoke and water damage. (Pl.'s Proposed Counter Findings of Fact ("PCFF"), Saunders Dep. 33, ECF No. 28-13.) As a temporary measure, after clean-up from the fire was completed, the rifle range also served as the pistol range (*Id.* at 34.) A decision was made early in 2000 to renovate West Point Building 665 housing the IMC by using, in part, private funds. (*Id.* at 37-43.)

The West Point Association of Graduates ("AOG"), a private alumni organization located at West Point, is authorized to raise funds on behalf of the United States Military Academy. (*Id.* at 18-19.) At all relevant time periods, LTC Earl Duston Saunders, Ret. was an employee of AOG, serving as Director of Annual Giving or Chief of Alumni Support Operations and also serving, on a volunteer basis, as pistol coach of the West Point Cadet Pistol Team. (*Id.* at 12-13, 15.) For the renovation of the IMC it was decided that AOG, using donated funds, would obtain and "gift" West Point with the target system for the pistol and rifle ranges, but the contract for the building renovation would be awarded by the Army. (*Id.* at 43-44.)

LTC Saunders was the AOG project officer involved in selecting the provider of the range target systems to be gifted to West Point. (*Id.* at 36, 43-44.)

For the design of the IMC renovation the Army chose the engineering firm STV, Inc. (Def.'s Proposed Findings of Uncontroverted Fact ("PFUF"), Conklin Decl. A87at ¶ 6, ECF No. 22-2; Pl.'s PCFF, Shah Dep. 40-41, ECF No. 28-1.) The initial design work was apparently funded by AOG so they would have something to show potential donors. (Pl.'s PCFF, Saunders Dep. 62, ECF No. 28-13.) STV's design included drawings which specified the heating, ventilation, and air conditioning ("HVAC") system to be installed for the ranges. (Pl.'s PCFF, Shah Dep. 41, ECF No. 28-1; Pl.'s PCFF, Saunders Dep. 64, ECF No. 28-13.) HVAC systems for shooting ranges must provide enough velocity in the air handling equipment to clear fumes, including gun powder and lead residue from the discharge of weapons without causing air movement which would disturb the targets. (Pl.'s PCFF, Saunders Dep. 67, 75, 76, ECF No. 28-13; Pl.'s PCFF, Shah Dep. 19-20, 33, 109, ECF No. 28-1.)

In choosing the company to provide the range target systems to be gifted to West Point by AOG as a part of the IMC renovation, LTC Saunders confined his search to two firms, Rangetech International Corporation and Caswell Detroit Armor Company. (Pl.'s PCFF, Saunders Dep. 50, ECF No. 28-13.) LTC Saunders considered these firms to be two of the preeminent makers of target systems. (*Id.*) The U. S. Navy's chief range specialist advised LTC Saunders that choosing one of these two companies would eliminate problems. (*Id.* at 50-51.) LTC Saunders visited the home offices of both firms and examined several range projects they had completed. (*Id.* at 51.) His recommended choice for the AOG gift of the range target systems was Caswell Detroit Armor Company and Caswell did subsequently install the target systems. (*Id.* at 51-56.)

For the building work needed to complete the renovation of the IMC, on July 11, 2000, the Army, acting through West Point, issued Solicitation No. DAAG 60-00-R-0005 seeking offers for a firm, fixed price contract. (Def.'s PFUF, Conklin Decl. ¶ 2, Ex. 1, ECF No. 22-2.) The solicitation called for the installation of a HVAC system and provided that "[t]he offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation." (*Id.* at ¶ 4, Ex. 1, ECF No. 22-2.) The STV design drawings for HVAC were part of the solicitation. (Pl.'s PCFF, Shah Dep. 34-40, ECF No. 28-1.) The solicitation also provided that, "THE CONTRACTOR SHALL SUBCONTRACT THE HVAC

SYSTEM WITH RANGETECH OR CASWELL AND SHALL SUBMIT PROOF OF THIS RELATIONSHIP WITH ITS OFFER." (Def.'s PFUF, Conklin Decl., Ex. 1 at A147, ECF No. 22-1.)

LTC Saunders showed Rangetech and Caswell the STV drawings during his discussions with them concerning the target systems AOG would acquire and gift as a part of the IMC renovation.  (Pl.'s PCFF, Saunders Dep. 64, ECF No. 28-13.)  Both firms were also experts in shooting range ventilation and both told LTC Saunders that they considered the STV HVAC design was inadequate.  (*Id.* at 64, 73, 93.)  On July 13, 2000, LTC Saunders sent an e-mail to Krista Mortimer at Caswell with a "cc" to "Best, V." and "Deyo, D."  (Compl. Ex. B, ECF No. 1.)  Victoria Best, an OAG employee, was the primary AOG fundraiser for the target system gift project.  (Pl.'s PCFF, Saunders Dep. 87, 139, ECF No. 28-13.)  Don Deyo was the initial West Point project engineer for the IMC renovation project and, upon his retirement in early 2001, was replaced by Paul Simihtis, another West Point mechanical engineer. (*Id.*, Saunders Dep. 94, 163, ECF No. 28-13; Shah Dep. 47-48, ECF No. 28-1; Deyo Dep. 33, 68, 96, ECF No. 28-8.)

The July 13, 2000 e-mail sent by LTC Saunders to Caswell comprised a message addressed to "Tracy."  Tracy Newton was the Caswell sales marketing representative that LTC Saunders dealt with in acquiring the range target systems. (Pl.'s PCFF, Saunders Dep. 91, ECF No. 28-13.)  The message stated:

> Tracy:
> Can't give you a detailed reply at the moment but your request for additional info was discussed at a meeting we had yesterday.  Someone, probably Don Deyo, will be getting back to you soon with the info you requested.
>
> The Target System contract will be with the AOG, not West Point, We will contract directly with Caswell Detroit Armor or Rangetech.
>
> The contract for the remainder of the project will be a government contract.
>
> The general contractor will be required to use either Caswell Detroit Armor or Rangetech for the Ventilation System portion of the government contract.  If you feel that your own system, not the one designed by STV, is superior and/or cheaper, a modification to the contract will be made and you may install your proprietary system.

I will handle all aspects of negotiating the contract for the targeting system.  Any questions you have concerning the ventilation system should be directed to Denise Conklin, 914-938-5102.  She works in the Directorate of Contracting here at West Point.

Duston

(Def.'s PFUF, Deyo Decl., Ex. 1, ECF No. 22-2; Pl.'s PCFF, Deyo Dep. Ex. 20, ECF No. 28-12.)  LTC Saunders did not provide a similar communication to Rangetech. (Pl.'s PCFF, Saunders Dep. 145, ECF No. 28-13.)

Plaintiff prepared an offer in response to the West Point Solicitation No. DAAG 60-00-R-0005 (Pl.'s PCFF, Shah Dep. 14, ECF No. 28-1.)  For the HVAC portion of the offer plaintiff obtained proposals from Rangetech and from Gleason & Elfering (G & E).  (*Id.* at 23, 30.)  At this time period, Caswell used G & E exclusively as its contractor for ventilation equipment.  (Pl.'s PCFF, Saunders Dep. Ex. 11, ECF No. 28-20 (e-mail Tracy to Duston, January 19, 2001).)  Caswell and Rangetech were ventilation experts and neither performed heating and air conditioning work. (*Id.*, Shah Dep. 28, ECF No. 28-1.)  Accordingly, for the heating and air conditioning, plaintiff obtained a proposal from HVAK (*Id.* at 27.)  G & E's proposal to plaintiff for the HVAC was $570,000, which sum plaintiff used for its offer in response to the West Point solicitation.  (*Id.* at 30.)

West Point received offers from four firms (Pl.'s PCFF, Saunders Dep. Ex. 5 at 1, ECF No. 28-17.)  The Source Selection Decision concluded that "P&K's offer represents the best overall value to the Government." (*Id.* at 6.)  The contract was awarded to plaintiff at the price offered, $3,911,142.75. (*Id.* at 3.)  This price was the lowest offer submitted and was more than $250,000 below the next lowest offer. (*Id.* at 5.)  To meet the solicitation requirement that the HVAC system be subcontracted with Rangetech or Caswell, plaintiff submitted a letter, as its proof that it would have the required relationships.  (Compl. Ex. D, ECF No. 1.)  The Source Selection Decision notes that all of the offerors complied with the requirement to show proof of a subcontract relationship with Caswell or Rangetech. (Pl.'s PCFF, Saunders Dep. Ex. 5 at 1, ECF No. 28-17.)

Plaintiff was awarded the West Point contract for the IMC renovation on September 28, 2000. (Def.'s PFUF, Conklin Decl. ¶ 7, ECF No. 22-2.) Following the award plaintiff proceeded to award subcontracts for work on the project, including

a $570,000 subcontract to G & E for HVAC and a subcontract to HVAK Mechanical for HVAC work that G & E excluded from its subcontract.  (Pl.'s PCFF, Shah Dep. 32, 39, ECF No. 28-1; *id.*, Ex. 5 (November 10, 2000), ECF No. 28-3; Compl. Ex. E, ECF No. 1.)  After the award of the subcontract to G & E, Michael Bott, the project manager for G & E and his professional engineer traveled from Mundelein, Illinois, where G & E was located, to Newburgh, New York and proceeded to spend three or four days at the IMC site.  (Pl.'s PCFF, Shah Dep. 32, ECF No. 28-1.)  Mr. Bott and his staff coordinated with Mr. Anant Shah of HVAK Mechanical, made measurements, developed drawings and prepared a package for plaintiff to submit to STV.  (*Id.* at 33, 39-41, ECF No. 28-1; *id.* Deyo Dep. Ex. 11, ECF No. 28-10.)  When the package was submitted to STV, STV objected that the G & E design differed from the STV design for HVAC in the IMC contract.  (*Id.*( ECF No. 28-1)) Plaintiff asserts this was the first notice it had that G & E planned to change the contract design for HVAC. (*Id.*; Deyo Dep. Ex. 11, ECF No. 28-10 ("[o]n or about the 24th of November, [b]oth Mr. Bott [G & E] and Mr. Shah [HVAK] came to a conclusion that the specified ventilation system needed to be redesigned."))

On December 14, 2000, plaintiff sent Request for Information ("RFI") No. 6 (Mechanical) to Denise Conklin, the West Point contact for the IMC contract, comprising the following text:

> As discussed in the site meeting on December 04, 2000, our mechanical subcontractor has some serious concerns for ventilation system for the project. They fill [sic] that the system needs to be redesigned.  Our subcontractor has redesigned the system at no cost to the government.  The following criteria were considered
> > 1) Original design does not meet NIASH 76-130 code
> > 2) Equipment are under designed due to the above fact
> > 3) Original design does not create any negative pressure
> > 4) Concern that contract drawing calls for very little static pressure
> > and system cannot function
> As requested by you they have sent these revised drawings to STV, Inc. via e-mail on 12/7/00.  To date we have not received response to this issue.  Several of our submittals are held up due to this and will cause delays in completion of the project.
>
> Please look in to the matter and do needful to expedite the resolution.  Attached is a copy of letter dated 12/01/00 from G & E, which was given to you in the meeting for your ready reference.

(Def.'s PFUF, Conklin Decl, Ex. 4 at A206, ECF No. 22-2.)

On December 29, 2000, Denise Conklin responded to RFI No. 6 as follows:

Below is the Government response to your request for information number 6.

1. Please supply specific information regarding the subcontractor's claim that the STV design does not meet NIOSH 76-130. Copies of NIOSH 76-130, calculations, ventilation methods etc. need to be provided in order for the design to be properly reviewed.
2. Provide justification for larger ducts.
3. The design does not account for structural steel interferences and will result in duct modifications during installation, which will adversely affect the performance of the entire system.
4. The high duct velocities and high static pressure will create noise problems.
5. Your design does not address added heat load requirements from the additional air infiltration requirements.
6. Your design does not allow for filter and coil maintenance.
7. Your design does not utilize exhaust stacks thereby increasing the possibility of air contamination.
8. Your design has exhaust ducts below the bottom cord of the existing trusses without baffle protection.
9. Your design is rejected based on the above facts. However the Government is concerned with the subcontractor's statements regarding the design but you need to provide all the facts to support that claim.
If you have any questions and or comments, please contact Denise Conklin at (845) 938-5102.

(*Id.* at A208, ECF No. 22-2.)

On January 3, 2001, plaintiff responded to Ms. Conklin's December 29, 2000 communication concerning RFI No. 6, forwarding a G & E letter stating and explaining its position that the STV system had seven problems. (Pl.'s PCFF, Saunders Dep. Ex. 11, ECF No. 28-20.) On January 19, 2001, Tracy Newton from Caswell e-mailed LTC Saunders with a brief update on the target systems work but then digressed to discuss "disturbing news" obtained when discussing the project with Mike Bott of G & E. (*Id.* at 33-34) The news was that the STV engineers were "not approving our equipment selection & arrangement." (*Id.* at 33.) Mr. Newton stated that his "point is that CDAC wants to be sure that West Point gets the range they deserve and if the ventilation system does not function properly, I do not want that problem somehow tied to CDAC equipment." (*Id.* at 34.) Mr. Newton also noted that he realized that the ventilation portion of the project is funded separately from

the target system, but thought LTC Saunders should be aware of what transpired and "perhaps get involved with this."  (*Id.*)

G & E/Caswell informed plaintiff that they declined to install the STV designed ventilation system specified in the IMC contract, out of concern that it would not work, and since they installed ranges worldwide they did not want to ruin their reputation.  (Pl.'s PCFF, Shah Dep. 51, ECF 28-1.)  G & E withdrew from its contract with plaintiff.  (*Id.* at 58.)

On February 1, 2001, West Point resolved the issue over the HVAC contract requirements by sending a letter to plaintiff as follows (Def.'s PFUF, Conklin Decl. Ex. 6, ECF No. 22-2.):

> Directorate of Contracting                              February 1, 2001
> Bldg. 681, USMA
> West Point, New York 10996
>
> SUBJECT; DAAG60-00-C-0024 Rehabilitation of the Indoor Marksmanship Center
>
> P&K Contracting, Inc.
> 199 Zabriskie Street
> Jersey City, NJ 07307
>
> Dear Mr. Patel
>
> Below is the Government response to your request for information number 6-A and 10.
>
> 1. RFI #6-A - Contractor is to install the ventilation system as per the contract drawings and specification.  The requirement to have Caswell Detroit or Rangetech install the system is deleted.
>
> 2. RFI #10 - See attached Hydrant flow test report.
>
> If you have any questions and or comments, please contact Denise Conklin at (845) 938-5102.
>
> Sincerely,
>
> Denise Conklin
> Contract Specialist

Following the February 1, 2001 directive to install the ventilation system per the contract drawings and the deletion of the requirement to subcontract with Caswell or Rangetech, plaintiff obtained two proposals to accomplish this task.  The lower proposal, submitted by HVAK Mechanical, of $783,500.00 exceeded the withdrawn G & E subcontract price of $570,000.00 by $213,500.  (Pl.'s PCFF, Shah Dep. Ex. 6, ECF No. 28-4.)  Plaintiff selected HVAK to replace G & E and HVAK proceeded to install the contractual HVAC design.  (*Id.*, Shah Dep. 59, 66, ECF No. 28-1.)  After the project was completed range users noticed that air flow from the HVAC system caused targets to sway.  (Def.'s PFUF, Conklin Dec. ¶ 16, ECF No. 22-1; Pl.'s PCFF, Saunders Dep. 73, ECF No. 28-13; Pl.'s PCFF, Shah Dep. 109, ECF No. 28-1.)  To correct this problem, on September 8, 2003, West Point issued Modification No. 15 to the IMC contract which provided an additional $50,667.76 for the demolition of existing diffusers and "[r]einstallation of properly engineered laminar air diffusers." (Def.'s PFUF, Conklin Dec. Ex. 7, ECF No. 22-2; Pl.'s PCFF Shah Dep. 111, ECF No. 28-1.)

On June 21, 2001, plaintiff submitted to Denise Conklin a request for a change order in the sum of $245,525 plus a time extension "due to a change in requirements respecting the HVAC subcontractor . . . ."  (Pl.'s PCFF, Shah Dep. Ex. 9, ECF No. 28-6.)  No action was taken on the request.  (*Id.*, Shah Dep. 103-04, ECF No. 28-1.)  On August 23, 2006, counsel for plaintiff submitted a claim for an equitable adjustment of $245,525 plus time extension to Denise Conklin.  (*Id.*, Shah Dep. Ex. 10, ECF No. 28-7.)  The claim is stated to be based on the difference between the cost of the HVAC system as proposed by plaintiff and the actual cost of the system as provided together with overhead and profit.  (*Id.*)  By letter dated March 12, 2009, the West Point Contracting Officer issued a final decision denying plaintiff's claim. (Compl. Ex. A, ECF No. 1.)  This litigation ensued.

## DISCUSSION

Summary judgment is appropriate when there are no genuine disputes over material facts and the moving party is entitled to prevail as a matter of law.  RCFC 56(c).[1]  *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.

---

[1] Effective July 15, 2011, the Rules of the United States Court of Federal Claims (RCFC) were amended, changing the language and structure of Rule 56 to "reflect the corresponding revision (continued...)

Cir. 1987). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In determining whether there is a genuine issue of material fact, the court will assume the truth of the evidence presented by the non-moving party and draw all reasonable inferences therefrom in the non-movant's favor.  *Id*. at 255.  A fact is material if it would make a difference in the result of the case.  Irrelevant or tangential factual disputes do not preclude the entry of summary judgment.  *Id*. at 247-48. *See also Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001).

Plaintiff's claim in this case centers on a sentence in the July 13, 2000 e-mail LTC Saunders sent to Tracy Newton, the Caswell sales representative he dealt with in purchasing the shooting range target systems which AOG was to gift to West Point. With reference to the ventilation system for the shooting ranges, which was not included in AOG's purchase, but, as designed by STV, was to be included in the separate Army contract for the IMC renovation, LTC Saunders stated, "[i]f you feel that your own system, not the one designed by STV, is superior and or cheaper, a modification to the contract will be made and you may install your proprietary system."

Plaintiff's rationale for its $245,525.00 claim is that G & E, its HVAC subcontractor, and the contractor Caswell used for its range ventilation systems, relied on the LTC Saunders' e-mail and based its subcontract price quotation to plaintiff on a Caswell ventilation system, not the STV design in the Army's solicitation drawings.  Plaintiff used the G & E price quote in preparing its successful offer for the Army contract.  Thus, when G & E then refused to install the STV

---

[1/] (...continued)
of [Federal Rule of Civil Procedure 56] that became effective December 1, 2010." RCFC 56 Rules Committee Note (2011).  Defendant's Motion for Summary Judgment was filed prior to July 15, 2011 and refers to the prior version of RCFC 56.  Because RCFC 56 remains the same in substance, the court nevertheless applies the current version of RCFC 56. See RCFC 86 ("These rules and any subsequent amendments are applicable to all proceedings pending at the time of the adoption of the revision or amendment or thereafter filed, except to the extent that the court determines that their application to a pending action would not be feasible or would work injustice, in which event the former procedure applies.").

design, plaintiff had to obtain a replacement HVAC subcontractor, which cost plaintiff $245,525 in excess of the G & E price.

Plaintiff asserts that it had no knowledge of the LTC Saunders' e-mail when preparing its winning offer for the Army contract and bases entitlement to recover its increased HVAC cost on the Army's "superior knowledge" in that Don Deyo, the Army's engineer on the project, had received a copy of the e-mail.  *See GAF Corp. v. United States*, 932 F.2d 947, 949 (Fed. Cir. 1991); Pl.'s Opp'n Br. 24-28, ECF No. 27.

Plaintiff also relies on the doctrine of equitable estoppel and further asserts that government actions with respect to the HVAC requirement breached the covenant of good faith and fair dealing and the implied obligation not to hinder or delay plaintiff's contract performance.  *See* Pl.'s Opp'n Br. 29-39, ECF No. 27; *Emeco Indus., Inc. v. United States*, 202 Ct. Cl. 1006, 1015-18 (1973); *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010).

In moving for summary judgment, defendant discounts plaintiff's ability to establish a viable "superior knowledge" or equitable estoppel claim because it, or its HVAC subcontractor, did not obtain any assurances, from any person having authority to bind the government, that the contractual HVAC design would be modified.  *See Johnson Mgmt. Group, Inc. v. Martinez*, 308 F.3d 1245, 1255 (Fed. Cir. 2002); *Melrose Assocs. L. P. v. United States*, 45 Fed. Cl. 56, 60-61 (1999).  LTC Saunders, an AOG employee, did not have any government contract authority. (Pl.'s PCFF, Saunders' Dep. 139-40, ECF No. 28-13; Pl.'s PCFF, Shah Dep. 82; Def.'s PFUF, Pl.'s Resp. to Req. for Admis. No. 6 at A78, ECF No. 22-2.)

With respect to plaintiff's ability to establish a breach of the covenant of good faith and fair dealing defendant notes that West Point simply required plaintiff to comply with the HVAC drawings in the contract when it was awarded. (Def.'s Mot. Summ. J. 17, ECF No. 21.)  In general, the government is entitled to obtain precisely that for which it contracts.  *J. L. Malone & Assocs. v. United States*, 879 F.2d 841, 845 (Fed. Cir. 1989)

The circumstance that plaintiff's prospects for establishing a viable superior knowledge, equitable estoppel, or breach of the covenant of good faith and fair dealing claim for its $245,525 in increased HVAC cost are problematical, does not

indicate that defendant is entitled to summary judgment at this stage in the proceedings.  This is because the facts as set forth for the purpose of ruling on defendant's motion point toward the possibility that a mutual mistake of fact was involved in regard to the award of the West Point IMC renovation contract.  To establish recovery on the basis of a mutual mistake involves proof of four elements:

> (1) the parties to the contract were mistaken in their belief regarding a fact;

> (2) that mistaken belief constituted a basic assumption underlying the contract;

> (3) the mistake had a material effect on the bargain; and

> (4) the contract did not put the risk of the mistake on the party seeking reformation.

*Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990).

By retaining STV to design the HVAC system included in the specifications for the IMC renovation and at the same time mandating that the firm awarded the contract subcontract the HVAC portion to Caswell or Rangetech, the basic underlying assumption was that Caswell or Rangetech, recognized international shooting range construction experts, would subcontract to install the STV-designed HVAC system as specified.  Plaintiff in obtaining its HVAC price quote from a firm associated with Caswell, also assumed that G & E/Caswell would install the STV-designed system. In fact, G & E/Caswell would not install the STV-designed HVAC system and this basic factual assumption underlying the contract was mistaken.

When, to safeguard its international business reputation and not for financial reasons, G & E/Caswell refused to install the STV system it considered to be inadequate, West Point had to delete the contractual mandate requiring subcontracting with Caswell or Rangetech and plaintiff had to abandon its reliance on G & E/Caswell and obtain a substitute HVAC subcontractor at additional cost to install the STV system which, in fact, did prove to be inadequate in operation.

The facts in this case appear to be sufficiently analogous to those in *National Presto Indus., Inc. v. United States*, 338 F.2d 99, 167 Ct. Cl. 749 (1964), involving a mutual mistake of fact, to indicate the possibility of a similar recovery.  Further proceedings to explore this possibility are required.

## CONCLUSION

In these circumstances, it is **ORDERED** that:

(1) Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**, without prejudice to its renewal upon further consideration as to the existence of a mutual mistake of fact and any resulting monetary relief;

(2) On or before November 8, 2011, counsel shall file a status report(s) proposing a schedule(s) for further proceedings in this matter.

s/ James F. Merow
James F. Merow
Senior Judge